[No. S029545. Jan 31, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
VERNON COLANTUONO, Defendant and Appellant.

## COUNSEL

Joseph F. Walsh, under appointment by the Supreme Court, for Defendant and Appellant.

Kenneth Clayman, Public Defender (Ventura), Susan R. Olson, Deputy Public Defender, Thomas F. Lundy, John T. Philipsborn and John Doyle as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Donald E. de Nicola, Robert F. Katz and J. Robert Renner, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARABIAN, J.**—In this case we determine whether the trial court properly instructed the jury on assault and assault with a deadly weapon (Pen. Code, §§ 240, 245). To do so, we again analyze the intent or mental state necessary to establish these offenses and "hopefully eliminate the confusion on this issue which has developed throughout the courts of this state." (*People* v. *Rocha* (1971) 3 Cal.3d 893, 896 [92 Cal.Rptr. 172, 479 P.2d 372] [*Rocha*].)

## FACTS

The facts are brief but tragic: Early on the evening of November 17, 1990, four young men, all friends of appellant, were congregated on a neighborhood street corner talking and engaging in a certain amount of horseplay. Appellant approached the group and exchanged greetings. One of the young men, Gabriel Laguna, tried to draw appellant into a "play fight." When appellant declined, Laguna persisted and mildly taunted him. Appellant became somewhat irritated or angry and then drew a .357 magnum revolver from his waistband and pointed it at Laguna.

According to some of the witnesses, Laguna attempted to push the weapon away several times, but appellant continued to aim it at him. At this point appellant either said, "I'm going to shoot you," or Laguna asked, "Are you going to shoot me?" In any event, the gun discharged seconds later, shooting Laguna in the neck and totally paralyzing him. Appellant asked the victim "Did I shoot you?" or stated "I shot him" and then ran away. He later turned himself in to the police.

With slight discrepancies, the four percipient witnesses, including the victim, recounted the foregoing events at trial. Appellant took the stand in his own behalf and testified that when he approached his friends on the street corner, he was contemplating taking his own life later that evening. He did not know the gun was loaded, although he had bullets for it in his jacket pocket. Appellant claimed he did not intend to shoot the victim, and fired the weapon only accidentally as Laguna pushed it away. He armed himself for protection against gangs but never carried the gun loaded when he was out on the street. Numerous defense witnesses testified to appellant's character for nonviolence.

The trial court gave the standard instructions on assault and assault with a deadly weapon,[1] with the following augmentation: "The requisite intent for the commission of an assault with a deadly weapon is the intent to commit a

---

[1] The court essentially gave the current version of CALJIC No. 9.00 (5th ed. 1988 bound vol.), which instructed the jury that the crime of assault is established upon proof of the following elements:

"1. An unlawful attempt was made to apply physical force upon the person of another,

"2. At the time of such attempt the person who made the attempt had the present ability to apply such physical force, and

"3. The person making the attempt had a general criminal intent, which, in this case, means that such person intended to commit an act, the direct[,] natural and probable consequences of which if successfully completed would be the application of physical force upon the person of another.

"To constitute an assault, it is not necessary that any actual injury be inflicted. However, if an injury is inflicted it may be considered in connection with other evidence in determining

battery. Reckless conduct alone, does not constitute a sufficient basis for assault or for battery even if the assault results in an injury to another. However, when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit a battery is presumed." The jury found appellant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2)) and found true allegations that he intentionally inflicted great bodily injury (Pen. Code, § 12022.7) and personally used a firearm in the commission of the crime (Pen. Code, § 12022.5). The trial court sentenced appellant to a total of seven years in state prison but recommended housing him at the California Youth Authority.

On appeal, appellant contended the language cited above impermissibly relieved the prosecution of proving every element of the offense beyond a reasonable doubt because it created a mandatory presumption as to his intent. In a divided opinion, the Court of Appeal concluded the modification did not remove the question of intent from the jury's consideration. The court found that the instructions as a whole accurately stated the substance of the law and set forth the predicate facts that would establish assault with a deadly weapon, including the requisite mental state. We granted appellant's petition for review to resolve a developing conflict in decisions of the Courts of Appeal.

## Discussion

 The portion of the instruction on assault with a deadly weapon in question appears in the Comments to CALJIC No. 9.02, *supra*, which in turn cites *People* v. *Lathus* (1973) 35 Cal.App.3d 466, 470 [110 Cal.Rptr. 921] (*Lathus*), as its source. Appellant contends the supplemental language allowed the jury to presume his intent, thereby unconstitutionally relieving the prosecution of its burden of proof on that element. (*Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]; see *People* v. *Burres* (1980) 101 Cal.App.3d 341, 346-353 [161 Cal.Rptr. 593] [*Burres*].) The Attorney General responds that the instruction was proper because it simply defined those circumstances sufficient to establish the commission of an assault without the aid of an impermissible presumption. (Cf. *People* v. *Dillon* (1983) 34 Cal.3d 441, 474-476 [194 Cal.Rptr. 390, 668 P.2d 697] [felony-murder rule does not create presumption of malice but states rule of substantive law, which alternately defines first degree murder by eliminating necessity of proving malice].) As we explain, the answer lies somewhere in between, albeit closer to the position advocated by the Attorney General.

whether an assault was committed and, if so, the nature of the assault."

This instruction accompanied CALJIC No. 9.02 (5th ed. 1988) defining assault with a deadly weapon, which in part requires proof that "[a] person was assaulted."

Deciphering the requisite intent for assault and assault with a deadly weapon has been a recurring task for this court.[2] (See, e.g., *People* v. *McMakin* (1857) 8 Cal. 547.) We last addressed the question in *Rocha, supra,* 3 Cal.3d 893, having previously touched upon the subject in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370] (*Hood*). The issue in *Hood* concerned whether to allow evidence of the defendant's intoxication as a defense. (1 Cal.3d at p. 458.) Our analysis recognized that a conventional specific intent-general intent inquiry was inadequate to resolve the question directly: both definitions could apply equally depending upon the analytical perspective. (*Id.,* at pp. 456-458.) We therefore resorted to "other [policy] considerations" in deciding that " 'an offense of this nature is not one which requires an intent that is susceptible to negation through a showing of voluntary intoxication,' " principally because it could lead to the anomalous result of "allow[ing such] evidence . . . to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner." (*Id.,* at p. 458.) Thus, without definitively articulating the requisite mental state, our decision in *Hood* was consistent with the "[m]any cases" holding that neither offense is a specific intent crime. (*Id.,* at p. 452.)

In *Rocha, supra,* we squarely confronted the issue and held, in accord with long-standing tradition as well as the legislative history of Penal Code section 245, that assault with a deadly weapon is a general intent crime.[3] (3 Cal.3d at p. 899; see *Hood, supra,* 1 Cal.3d at p. 452, and fn. 4.) To

---

[2]In general, the governing principles of law on intent are the same for both assault and assault with a deadly weapon. (See CALJIC No. 9.02, *supra.*) For convenience, our analysis may at times refer simply to "assault"; unless otherwise indicated or apparent, such reference encompasses both crimes.

[3]Justice Kennard argues that *Rocha* was wrongly decided and that a specific intent to injure is necessary to establish the mental state of assault. For several reasons, we decline to reconsider the conclusion that a general intent to commit an injurious act suffices. First, our analysis in *Rocha* fully accords with more than a century of precedent holding that "no specific intent is necessary to constitute the crime . . . ." (*People* v. *Gordan* (1894) 103 Cal. 568, 575 [37 P. 534]; see *Hood, supra,* 1 Cal.3d at p. 452, fn. 4.) Notably, none of these decisions, including numerous early opinions of this court, questions this proposition or considers the possibility of a contrary implication in the code commissioners' comments to Penal Code section 240. (See, e.g., *People* v. *Gordan, supra,* 103 Cal. at p. 575; *People* v. *Franklin* (1886) 70 Cal. 639 [11 P. 790]; *People* v. *Marseiler* (1886) 70 Cal. 98, 100 [11 P. 503]; *People* v. *Turner* (1884) 65 Cal. 540, 542 [4 P. 53]; see also *People* v. *McMakin, supra,* 8 Cal. at p. 548.)

Second, characterizing assault as a specific intent crime is inconsistent with the legislative history of assault with a deadly weapon, which at one time included an "intent to do great bodily harm" but was amended by the Legislature to delete that requirement. (Cal. Code Amends. 1873-1874, ch. 614, § 22, p. 428; compare *People* v. *Turner, supra,* 65 Cal. 540 with *People* v. *Keefer* (1861) 18 Cal. 636.) Finally, we could not overrule *Rocha* on the question of general intent without doing great violence to our holding in *Hood, supra,* 1 Cal.3d at page 458, as well as innumerable other cases, that voluntary intoxication is not a defense to [assault

determine the precise nature of this intent, we began with the statutory definition of assault: "an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of another, or in other words, it is an attempt to commit a battery. [Citations.] Accordingly the intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being 'any willful and unlawful use of force or violence upon the person of another.' [Citation.] We conclude that the criminal intent which is required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm[4] is not necessary." (*Rocha, supra,* 3 Cal.3d at p. 899, fns. omitted; *People* v. *Parks* (1971) 4 Cal.3d 955, 959 [95 Cal.Rptr. 193, 485 P.2d 257].)

From the foregoing we can distill the following principles concerning the mental state for assault: The mens rea is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another, i.e., a battery. Although the defendant must intentionally engage in conduct that will likely produce injurious consequences, the prosecution need not prove a specific intent to inflict a particular harm. (Cf. Pen. Code, § 7, subd. 1 [" 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to"].) The evidence must only demonstrate that the defendant willfully or purposefully attempted a "violent injury" or "the least touching," i.e., "any wrongful act committed by means of physical force against the person of another." (*People* v. *McCoy* (1944) 25 Cal.2d 177, 191 [153 P.2d 315]; see, *ante,* this page, fn. 4.) In other words, "[t]he use of the described force is what counts,

and] assault with a deadly weapon. Penal Code section 22, subdivision (b), expressly admits evidence of voluntary intoxication to negate intent "when a specific intent crime is charged." As we noted in *Hood,* however, "the crimes of assault and assault with a deadly weapon . . . are so frequently committed in just such a manner." (1 Cal.3d at p. 458.)

[4] A footnote to the discussion at this point further explains a critical analytical point: "A battery must be contemplated, but only an 'injury' as that term is used with respect to a battery need be intended. 'It has long been established, both in tort and criminal law, that "the least touching" may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.' [Citation.] [¶] 'The "violent injury" here mentioned is not synonymous with "bodily harm," but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act.' [Citation.]" (*Rocha, supra,* 3 Cal.3d at pp. 899-900, fn. 12.) Accordingly, references throughout this opinion to "violent injury" or "violent-injury-producing" acts should be understood in light of this explication.

not the intent with which same is employed." (*People* v. *Finley* (1963) 219 Cal.App.2d 330, 340 [33 Cal.Rptr. 31].) Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state. (See *People* v. *Peak* (1944) 66 Cal.App.2d 894, 902 [153 P.2d 464], disapproved on other grounds in *People* v. *Carmen* (1951) 36 Cal.2d 768, 776 [228 P.2d 281].)

Although our discussion in *Rocha* accurately focused on the violent-injury-producing nature of the defendant's acts, rather than on a separate and independent intention to cause such injury, as the starting point for determining the requisite intent for assault, a certain measure of understandable analytical uncertainty continues. (See, e.g., *People* v. *Cavazos* (1985) 172 Cal.App.3d 589, 594-595 [218 Cal.Rptr. 269]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 401, p. 464 [element of assault is "specific intent to commit a battery"].) We say "understandable" because this court's own decisions have occasionally tended to becloud rather than illuminate the matter. (See *People* v. *Garcia* (1984) 159 Cal.App.3d 781, 789 [205 Cal.Rptr. 722].) For example, in *People* v. *Carmen, supra*, 36 Cal.2d at page 775, disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], we stated, "One could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person." (See also *People* v. *Coffey* (1967) 67 Cal.2d 204, 222 [60 Cal.Rptr. 457, 430 P.2d 15].) This assertion implies assault might actually be a specific intent crime despite well-established authority to the contrary. (See *Hood, supra*, 1 Cal.3d at p. 452, fn. 4.)[5] Subsequently in *Rocha, supra*, 3 Cal.3d at pages 898-899, we neither expressly disapproved that implication nor endeavored to reconcile the statement. (See also *People* v. *Wolcott* (1983) 34 Cal.3d 92, 99 [192 Cal.Rptr. 748, 665 P.2d 520] [citing *Rocha* for the proposition that "to constitute an assault, the defendant must . . . intend to commit a battery"].)

We may trace much of the confusion, if not consternation, on this subject to the traditional shorthand characterization of assault as "attempted battery" and the unexamined assumption that, as with other attempted crimes, it must require a specific intent to commit the underlying offense. (See Pen. Code, § 21a; see, e.g., *People* v. *Cavazos, supra*, 172 Cal.App.3d at p. 595.) As we confirmed in *Rocha*, however, the law is to the contrary: assault

---

[5]Relying in part on the cited language, at least one Court of Appeal decision found "it now settled that assault is a specific intent crime. [Citations.]" (*People* v. *Fanning* (1968) 265 Cal.App.2d 729, 734 [71 Cal.Rptr. 641], disapproved in *Hood, supra*, 1 Cal.3d at p. 459.)

is a general intent crime.[6] The perception of inconsistency or illogic in this determination results from a failure to appreciate that the meaning of "attempt" can vary with the criminal context. Although often described as "attempted battery" for historical reasons, assault is not simply an adjunct of some underlying offense, but an independent crime statutorily delineated in terms of certain unlawful conduct immediately antecedent to battery. In defining it as an "attempt" (Pen. Code, § 240), the Legislature of 1872 used the reference only in its ordinary sense, not as the term of art we currently conceptualize, i.e., a failed or ineffectual effort to commit a substantive offense.[7] (Cf. Pen. Code, § 21a.) Otherwise, it would be unnecessary to distinguish assault as a separate crime: If the perpetrator failed to achieve his or her full criminal objective, the prosecution would simply charge "attempted battery" as it might allege "attempted murder" or "attempted burglary" under analogous circumstances. (See Pen. Code, § 664.)

"The original concept of criminal assault developed at an earlier day than the doctrine of criminal attempt in general, and crystallized on a much narrower basis in the sense of a greater degree of proximity. . . . 'The distinction may be thus defined: An assault is an act done toward the commission of a battery; it must precede the battery, but it does so immediately. The next movement would, at least to all appearance, complete the battery . . . . [A]n act constituting an attempt to commit a felony may be more remote . . . .' " (Perkins on Criminal Law (2d ed. 1969) ch. 2, § 2, pp. 118-119; see also *People* v. *Miller, supra*, 2 Cal.2d at p. 533; *People* v. *Staples* (1970) 6 Cal.App.3d 61, 67-68 [85 Cal.Rptr. 589].)

■ Assault thus lies on a definitional, not merely a factual, continuum of conduct that describes its essential relation to battery: An assault is an incipient or inchoate battery; a battery is a consummated assault. "An assault

---

[6]In some instances, a charge of assault may be coupled with another substantive offense, e.g., assault with intent to commit rape, in which case the perpetrator must have some further objective to accomplish by the assaultive conduct. Given its goal-oriented character, this type of crime does require a specific intent to commit the underlying offense.

[7]To illustrate the distinction: In the usual case of an attempted crime, the law requires that the defendant intend to commit the underlying offense, not simply to willfully engage in the preliminary act or acts that would result in the underlying offense if completed. (See *People* v. *Snyder* (1940) 15 Cal.2d 706, 708-709 [104 P.2d 639]; see also *People* v. *Miller* (1935) 2 Cal.2d 527, 532 [42 P.2d 308, 98 A.L.R. 913].) For example, a person could not be convicted of attempted rape for grabbing a woman and throwing her to the ground unless the evidence further established a specific purpose to force an act of sexual intercourse on the victim. In that situation, the law criminalizes the initial act as an attempt only when coupled with a particular culpable or blameworthy state of mind. (See *People* v. *Miller, supra*, 2 Cal.2d at p. 533.) With assault, conviction does not depend upon the defendant's specific intentions beyond the act itself as long as the conduct constituting the assault is likely to result in a battery. Therefore, the actions described above would be an assault (and battery) regardless of the person's mental state in grabbing the victim.

is a necessary element of battery, and it is impossible to commit battery without assaulting the victim." (*People* v. *Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512], disapproved on other grounds in *People* v. *Pearson* (1986) 42 Cal.3d 351, 357-358 [228 Cal.Rptr. 509, 721 P.2d 595].) This infrangible nexus means that once the violent-injury-producing course of conduct begins, untoward consequences will naturally and proximately follow. "The gravamen of the crime defined by [Penal Code] section 245 is *the likelihood that the force applied or attempted to be applied* will result in great bodily injury." (*People* v. *McCaffrey* (1953) 118 Cal.App.2d 611, 618-619 [258 P.2d 557].) The criminal law thus independently sanctions the initiation of force or violence—the "assault"—because it directly and immediately culminates in injury—the "battery." (See *People* v. *Hunter* (1925) 71 Cal.App. 315, 319 [235 P. 67].) Based on this apposition, each constitutes a discrete offense for which only an intent to commit the proscribed act is required. (See *People* v. *Yslas* (1865) 27 Cal. 630, 633; *People* v. *McMakin, supra,* 8 Cal. at p. 548.)

█ Considered from this perspective, it is clear that the question of intent for assault is determined by the character of the defendant's willful conduct considered in conjunction with its direct and probable consequences. If one commits an act that by its nature will likely result in physical force on another, the particular intention of committing a battery is thereby subsumed. Since the law seeks to prevent such harm irrespective of any actual purpose to cause it, a general criminal intent or willingness to commit the act satisfies the mens rea requirement for assault. "As Professor Perkins puts it: 'Intent includes those consequences which (a) represent the very purpose for which an act is done (regardless of the likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire).' " (*Lathus, supra,* 35 Cal.App.3d at p. 470.)

Thus, the observation in *People* v. *Carmen, supra,* that "One could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person" is technically accurate. (36 Cal.2d at p. 775.) The problem with this language, however, is that it tends to implicate a goal-oriented or specific intent state of mind. (See *Hood, supra,* 1 Cal.3d at p. 457, fn. 6.) █ This implication is misleading because for assault, as with any general intent crime, the nature of the defendant's *present willful conduct* alone suffices to establish the necessary mental state without inquiry as to an intent to cause further consequences.[8] (*Hood, supra,* 1 Cal.3d at pp. 456-457; cf. *People* v. *Griggs* (1989) 216 Cal.App.3d 734, 742 [265 Cal.Rptr. 53] ["To understand what constitutes the

---

[8]In assessing the language of *People* v. *Carmen, supra,* 36 Cal.2d 768, with respect to the requisite mental state for assault, we must bear in mind its analytical as well as factual

'person of another' for our purposes, we focus on the actions of the defendant."].) Accordingly, upon proof of a willful act that by its nature will directly and immediately cause " 'the least touching,' " "it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*Rocha, supra,* 3 Cal.3d at p. 899 and fn. 12, other fns. omitted.) The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm.[9] (But see *Rocha, supra,* 3 Cal.3d at p. 899, fn. 12.) Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to commit the violence is sufficient to establish the crime.[10]

context. The issue there was whether the trial court should have instructed on manslaughter when the defendant was charged with murder based upon the commission of felonious assault with a deadly weapon. (*Id.,* at pp. 774-776.) At the time, we had not yet held that first and second degree felony murder could not be predicated on a felony integral to the homicide. (See *People* v. *Ireland* (1969) 70 Cal.2d 522, 538-540 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].) Our concern therefore was to circumscribe those acts that would support a finding of assault with a deadly weapon, lest "it would always be second degree murder when a person kills another with no intent to do so, but does so as the result of his reckless conduct." (*People* v. *Carmen, supra,* 36 Cal.2d at p. 776.)

Of equal importance factually, the record established that the defendant presented evidence he did not intentionally aim at his victims when the gun he was carrying discharged; it fired accidentally when he stumbled while approaching the victims' car. (*People* v. *Carmen, supra,* 36 Cal.2d at pp. 772, 774, 776.) On this basis, the jury could have found, and therefore should have been instructed, that he did not commit an act likely to result in violent injury, but only failed to act with due caution and circumspection for which he would only be guilty of manslaughter. (*Id.,* at p. 776.)

*People* v. *Carmen, supra,* thus did not alter the mental state for assault or inject an "intent to harm" requirement. On the contrary, our decision expressly acknowledged that "in assault cases intent need not be specific—to cause any particular injury and it may be implied from the act [citation] . . . ." (36 Cal.2d at p. 776.) Moreover, "[i]t may be that an intent can be inferred from [reckless] conduct," although such conduct may also support a lesser offense. (*Ibid.*) Thus, *Carmen* in no respect contradicts but rather confirms our present analysis: that to commit an assault one must willfully attempt a violent act against another.

To the extent we may have extrapolated from *Carmen* an "intent to injure" in a later dictum in *People* v. *Coffey, supra,* 67 Cal.2d at page 222, we mischaracterized our analysis. As in *Carmen,* the defendant testified not only that he had no intention of harming or killing anyone, but "that he at no time aimed his gunshots at any person identifiable to him as such." (*Id.,* at p. 221.) If the jury believed he did not shoot at the victim, they could have found he did not commit a violent-injury-producing act necessary to establish an assault. (*Id.,* at pp. 221-222.)

[9]For this reason, the trier of fact may look to the completed battery to determine whether the defendant committed an assault, i.e., willfully engaged in conduct that would directly, naturally, and probably result in injury to another when in fact such injury actually occurred. (See *People* v. *Heise* (1933) 217 Cal. 671, 673 [20 P.2d 317]; CALJIC No. 9.00, *supra.*)

[10]This conclusion does not preclude a defendant charged with assault from presenting evidence that he or she did not intend to injure or do violence to the victim. (*People* v.

██ As this court explained more than a century ago, "Holding up a fist in a menacing manner, drawing a sword, or bayonet, presenting a gun at a person who is within its range, have been held to constitute an assault. So, *any other similar act*, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of *using actual violence* against the person of another, will be considered an assault." (*People* v. *McMakin, supra,* 8 Cal. at p. 548, italics added; *People* v. *McCoy, supra,* 25 Cal.2d at p. 193.) Hence, the necessary mental state is "an intent merely to do a violent act." (*Hood, supra,* 1 Cal.3d at p. 458.) The consequences of that act serve only to inform the inquiry of whether the defendant attempted physical force against the person of another; but they are not controlling. Once the violence is commenced, "the assault is complete." (*People* v. *Yslas, supra,* 27 Cal. at p. 633.)

██ Returning to the problem at hand: The portion of the instruction on assault with a deadly weapon appellant finds constitutionally objectionable derives from *Lathus, supra,* 35 Cal.App.3d 466, in which the Court of Appeal addressed a question of sufficiency of the evidence. The record established that the defendant had fired several pistol shots at a car parked on the shoulder of a highway while traveling along the road in another vehicle. The shots hit one of the car's tires and a person standing adjacent to the car. (*Id.,* at pp. 468-469.)

In assessing the evidence, the *Lathus* court acknowledged, "Reckless conduct alone does not constitute a sufficient basis for assault or for battery even if the assault results in an injury to another. [Citation.] . . . [¶] However, when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the battery is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety. Thus, if one deliberately employs a lethal weapon, such as a gun, with actual or presumptive knowledge that if utilized in the manner in which it is being used the infliction of serious bodily injury to another is very likely to occur, he is presumed to have intended the natural consequences of his deliberate act. As Professor Perkins put it: 'Intent includes those consequences which (a) represent the very purpose for which an act is done (regardless of the likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire).' (Perkins on Criminal Law (2d ed.) ch. 7, § 1, p. 747.)" (*Lathus, supra,* 35 Cal.App.3d at pp. 469-470.)

---

*McMakin, supra,* 8 Cal. at p. 549.) However, if the jury determines from the facts that the defendant willfully committed a violent act, i.e., engaged in conduct that would by its nature likely and directly result in a "violent injury," it can reasonably find from the totality of circumstances that all elements of the offense are satisfied, including the requisite mental state. (See *id.,* at pp. 548-549; *People* v. *Martinez* (1977) 75 Cal.App.3d 859, 863-865 [142 Cal.Rptr. 515].)

This statement of the law was adopted in several subsequent decisions reviewing sufficiency of the evidence. (*In re Brian F.* (1985) 167 Cal.App.3d 672, 674-675 [213 Cal.Rptr. 195]; *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 850 [206 Cal.Rptr. 823]; *In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898]; *People* v. *Bedolla* (1979) 94 Cal.App.3d 1, 6-7 [156 Cal.Rptr. 171]; *People* v. *Martinez, supra,* 75 Cal.App.3d at pp. 863-864; see also *People* v. *Cotton* (1980) 113 Cal.App.3d 294, 302-303 [169 Cal.Rptr. 814] [distinguishing *Lathus* in finding evidence insufficient to sustain conviction].)

The intent issue arose in an instructional context for the first time in *Burres, supra,* 101 Cal.App.3d 341, in which the trial court supplemented the standard instruction on assault with a deadly weapon with a paraphrase from *Lathus*: " 'When an act inherently dangerous to others is committed with a conscious disregard of human life and safety the intent to commit a battery is presumed.' " (101 Cal.App.3d at p. 347.) The Court of Appeal found this portion of the instruction constitutionally infirm. Since the "intent to commit battery" was an element of the offense, the added provision created a presumption that impermissibly relieved the prosecution of proving its entire case beyond a reasonable doubt. (*Id.,* at pp. 350-353.) In reaching this conclusion, the court did not take issue with *Lathus, supra,* as to either the substantive analysis or the finding of sufficient evidence of intent. (*Burres, supra,* 101 Cal.App.3d at p. 348.) When that analysis was formulated as an instruction, however, "the jury *could* have taken the presumption as irrefutable or casting upon appellant the burden of proving the lack of intent to commit a battery." (*Id.,* at p. 353; see also *People* v. *Riederer* (1990) 217 Cal.App.3d 829, 835-836 [266 Cal.Rptr. 355] [assuming instructional error but finding it harmless].) Appellant asserts a similar claim of error here.

We are unpersuaded that the *Lathus* instruction in this case created an unconstitutional burden-shifting presumption. In our estimation, the language at issue describes or defines conduct constituting an assault, including the element of general criminal intent. (See *Rocha, supra,* 3 Cal.3d at p. 899; cf. *People* v. *Dillon, supra,* 34 Cal.3d at pp. 474-475.) An act "inherently dangerous to others" is likely to result in "violent injury on the person of another." (Pen. Code, § 240.) If done "with conscious disregard of human life and safety," the perpetrator must be aware of the nature of the conduct and choose to ignore its potential for injury, i.e., act willfully. If these predicates are proven to the satisfaction of the trier of fact, the requisite intent is not "presumed"; rather, it is *established* by the evidence.[11] (See *People* v. *Carmen, supra,* 36 Cal.2d at p. 775; *People* v. *Corlett* (1944) 67 Cal.App.2d 33, 55 [153 P.2d 595], disapproved on other grounds in *Carmen,*

---

[11]To the extent *Burres, supra,* 101 Cal.App.3d 341 holds otherwise, it is disapproved.

at p. 776.) Assault being a general intent crime, once the jury find that the defendant willfully engaged in the conduct described in the instruction, they will necessarily have determined the question of intent independently of any legal presumption.[12] (See *Hood, supra,* 1 Cal.3d at p. 458, fn. 7; see also *Rose* v. *Clark* (1986) 478 U.S. 570, 581 [92 L.Ed.2d 460, 472-473, 106 S.Ct. 3101]; *Francis* v. *Franklin* (1985) 471 U.S. 307, 314-315 [85 L.Ed.2d 344, 353-354, 105 S.Ct. 1965]; *Ulster County Court* v. *Allen* (1979) 442 U.S. 140, 157-163 [60 L.Ed.2d 777, 792-796, 99 S.Ct. 2213]; cf. *People* v. *Miller, supra,* 2 Cal.2d at pp. 532-533.) The supplemental instruction in this case did no more than explain this distinction. (Cf. *In re Brian F., supra,* 167 Cal.App.3d at p. 675, fn. 2.)

■ Although we find no error here, neither do we sanction the language in *Lathus, supra,* 35 Cal.App.3d 466, as a proper direction to the jury.[13] Since intent always remains an issue of fact (*People* v. *McCoy, supra,* 25 Cal.2d at p. 192; *In re Jose R., supra,* 137 Cal.App.3d at p. 277), the jury must clearly understand its responsibility to resolve that question beyond a reasonable doubt, uninfluenced and unassisted by any other principle of law. (See *People* v. *Marceaux* (1970) 3 Cal.App.3d 613, 619-620 [83 Cal.Rptr. 798], disapproved on other grounds in *Rocha, supra,* 3 Cal.3d at p. 899, fn. 8; see also *Hood, supra,* 1 Cal.3d at p. 458, fn. 7.) Moreover, in light of recent refinements by the United States Supreme Court regarding presumptions and their effect on the prosecution's burden of proof, any reference of the word "presume" or its derivations can prove problematic on review. (See *Carella* v. *California* (1989) 491 U.S. 263, 265-267 [105 L.Ed.2d 218, 221, 223, 109 S.Ct. 2419]; *Rose* v. *Clark, supra,* 478 U.S. at pp. 579-582 [92 L.Ed.2d at pp. 471-473]; *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 84-86 [74 L.Ed.2d 823, 832-835, 103 S.Ct. 969]; *Sandstrom* v. *Montana, supra,* 442 U.S. at pp. 514-519 [61 L.Ed.2d at pp. 44-48].) Trial courts therefore should avoid the unnecessary use of such terms in all instructional contexts. Given the analytical complexity of this issue and the difficulties that

---

[12]As with any other element of the crime, the jury may properly consider circumstantial evidence in determining the question of intent. (See *People* v. *Parks, supra,* 4 Cal.3d at pp. 961-962; *People* v. *Morrow* (1969) 268 Cal.App.2d 939, 950-951 [74 Cal.Rptr. 551]; *People* v. *Vasquez* (1927) 85 Cal.App. 575, 578 [259 P. 1005].)

[13]Indeed, this case illustrates the danger of assuming that a correct statement of substantive law will provide a sound basis for charging the jury. (See *People* v. *Smith* (1989) 214 Cal.App.3d 904, 912-913 [263 Cal.Rptr. 155]; *People* v. *Adams* (1987) 196 Cal.App.3d 201, 204-205 [241 Cal.Rptr. 684]; see also *People* v. *Gibson* (1965) 235 Cal.App.2d 667, 669 [45 Cal.Rptr. 382].) The discussion in an appellate decision is directed to the issue presented. The reviewing court generally does not contemplate a subsequent transmutation of its words into jury instructions and hence does not choose them with that end in mind. We therefore strongly caution that when evaluating special instructions, trial courts carefully consider whether such derivative application is consistent with their original usage. As the court in *Burres, supra,* 101 Cal.App.3d at page 348 aptly observed, "*Lathus* did *not* involve an instruction of law . . . ." Since the jury had already resolved the evidence against the defendant, the analysis did not risk invading the province of the trier of fact.

continue to pervade its application, we admonish trial courts not to embellish on the standard jury instructions for assault and assault with a deadly weapon unless compelled by the peculiar facts of the case. (Cf. *People* v. *Dellinger* (1989) 49 Cal.3d 1212, 1221-1222 [264 Cal.Rptr. 841, 783 P.2d 200].)

For the reasons discussed above, we reject appellant's claim that the augmentation of CALJIC No. 9.02 created a constitutionally impermissible presumption or warrants reversal of his conviction. Moreover, even if the trial court erred, that fact would not alter the result here: Given the jury's express finding that appellant inflicted great bodily injury within the meaning of Penal Code section 12022.7, any possible deficiency was, beyond a reasonable doubt, not prejudicial. (*People* v. *Lesnick* (1987) 189 Cal.App.3d 637, 643 [234 Cal.Rptr. 491]; *People* v. *Spence* (1970) 3 Cal.App.3d 599, 605-606 [83 Cal.Rptr. 711], disapproved on other grounds in *Rocha, supra,* 3 Cal.3d at p. 899, fn. 8; see *People* v. *Howard* (1989) 1 Cal.4th 1132, 1172 [5 Cal.Rptr.2d 268, 824 P.2d 1315]; *Rose* v. *Clark, supra,* 478 U.S. at pp. 579-584 [92 L.Ed.2d at pp. 471-475].) This finding required a determination as a preliminary fact that appellant, with the specific intent to inflict such injury, did personally inflict great bodily injury on the victim in the commission of the crime alleged. (See *People* v. *Calderon* (1991) 232 Cal.App.3d 930, 937 [283 Cal.Rptr. 833].) Although the jury could have decided otherwise, the evidence is sufficient to support this conclusion. Moreover, we find nothing in the record suggesting that the *Lathus* instruction prejudicially affected the jury's deliberation on this question.

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Concurring.—We granted review to clarify the nature of the mental component of the unlawful-attempt element of assault. This step became necessary because a minor dictum in *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372] (*Rocha*) has led to some confusion in the law. I welcome the majority's elimination of the confusion created by that dictum.

The majority conclude that to prove assault "The evidence must . . . demonstrate that the defendant willfully or purposefully attempted a 'violent injury' or 'the least touching,' i.e., 'any wrongful act committed by means of physical force against the person of another.' [Citation.]" (Maj. opn., *ante,* pp. 214-215.) The majority are correct.

Penal Code section 240 (all statutory references are to this code) defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." The statute does not explicitly specify the mental state required for this crime. It does explain that assault requires: (1) an act, consisting of an unlawful attempt to injure another, and (2) the current physical ability to commit the injury. Clearly the first element, the act, has an integral mental component: if the actor is unconscious of his or her act, no crime is committed. (§ 26, subd. Four.)[1]

Section 240 describes an "attempt" to "commit" an injury. In *People* v. *Carmen* (1951) 36 Cal.2d 768, 775 [228 P.2d 281] (*Carmen*), disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], we noted that "One could not very well 'attempt' or try to 'commit' an injury on the person of another if he had no intent to cause any injury to such other person."

As the majority note (maj. opn., *ante*, pp. 217-218 & fn. 8), *Carmen* was correct. I agree.

The majority's conclusion is strongly buttressed by the legislative history of the assault statute. The code commissioners' note to section 240 provides in relevant part (and with all italics in the original): "INTENT TO STRIKE.—An assault has also been said to be an intentional attempt, by violence, to do an injury to the person of another. It must be *intentional*. If there is no present purpose to do an injury, there is no assault. There must also be an *attempt*. A purpose not accompanied by an effort to carry into immediate execution falls short of an assault. Thus no words can amount to an assault. But rushing towards another with menacing gestures, and with a purpose to strike, is an assault, though the accused is prevented from striking before he comes near enough to do so. . . ." (Code comrs. note foll. Ann. Pen. Code, § 240 (1st ed. 1872, Haymond & Burch, comrs.-annotators) p. 104.) This statement is authoritative. (See *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 125 [253 Cal.Rptr. 1, 763 P.2d 852].)

Thus, *Carmen*'s conclusion that assault requires a purpose to injure was sound. As we stated in *People* v. *Wolcott* (1983) 34 Cal.3d 92, 99 [192 Cal.Rptr. 748, 665 P.2d 520], "to constitute an assault, the defendant must . . . intend to commit a battery . . . ." To the same effect is *People* v. *Fain* (1983) 34 Cal.3d 350, 356 [193 Cal.Rptr. 890, 667 P.2d 694].

---

[1]The required mental state for simple assault and assault with a firearm, as charged here (§ 245, subd. (a)(2)), is the same. The greater crime varies from the lesser only in that it contains the additional element of the use of a firearm. There is no additional or different mental element.

Unfortunately, *Rocha, supra,* 3 Cal.3d 893, commented that "the criminal intent . . . required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*Id.* at p. 899.)

*Rocha* was by and large soundly decided, and the dictum quoted above constituted a minor flaw. But so is a pinhole in a dike, and alas, the dictum gave rise to mischief. The "direct, natural and probable consequences" aside now forms the basis of the standard jury instruction on assault (CALJIC No. 9.00 (5th ed. 1988 bound vol.)), and also formed the basis of the instruction given in this case.

Giving an instruction based on CALJIC No. 9.00 violated state law and the federal Constitution because its language permitted the jury to convict defendant of assault without finding beyond a reasonable doubt that he had a purpose to injure. (See *People* v. *Williams* (1992) 4 Cal.4th 354, 365-367 [14 Cal.Rptr.2d 441, 841 P.2d 961] (conc. opn. of Mosk, J.).) The errors were compounded by giving another instruction that "when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit a battery is presumed." That instruction was entirely bewildering as well as legally faulty.[2]

Thus, the standard instruction on assault requires reexamination. The majority are right to warn, however, that the jury can find the actor's purpose was to injure by the circumstances surrounding the act. (See maj. opn., *ante,* pp. 218-219, fn. 10.)

Although giving the instructions violated state law and the federal Constitution, the errors were harmless because, as the majority observe, the jury specifically found that defendant intended to inflict great bodily injury on the victim. Any federal constitutional errors, on the basis of the instructions at issue here, of misstating an element of a crime, or of taking from the jury

---

[2]Amicus curiae California Attorneys for Criminal Justice contends that the "direct, natural and probable consequences" formulation contained in *Rocha, supra,* 3 Cal.3d 893, sets forth a minimum mental component of recklessness.

There is no need to decide this point, for as long as that language omits the legislative requirement of a purpose to injure, it suffices to say that it is incorrect, whatever level of culpability it represents. But viewed in the abstract, the *Rocha* formulation may actually stand for strict liability, because it omits any mental component whatever beyond the intent to do an act. For the *Rocha* language to mean recklessness, it would need to specify that the act was done in conscious disregard of the risk.

Clearly *Rocha, supra,* 3 Cal.3d 893, never intended to say that assault is a strict liability crime.

the question of defendant's intent, thus were harmless. (*Pope* v. *Illinois* (1987) 481 U.S. 497, 501-503 [95 L.Ed.2d 439, 445-446 107 S.Ct. 1918]; *Sullivan* v. *Louisiana* (1993) __ U.S. __, __ [124 L.Ed.2d 182, 190, 113 S.Ct. 2078] [dictum].) The same jury finding requires a conclusion that the clear state law errors in giving instructions that set forth the wrong mental state for an element of assault, or were confusing, or both, were harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

KENNARD, J., Concurring and Dissenting.—What is the culpable mental state required to commit an assault? Is it the intent to do an act, the likely consequence of which is physical injury to another? Or is it the intent to physically injure another?

In this case, the majority concludes that "a general criminal intent to commit the act suffices to establish the requisite mental state" of the crime of assault, so long as "the defendant willfully committed an act that by its nature will probably and directly result in injury to another . . . ." (Maj. opn., *ante*, pp. 214-215.) The majority reaches this conclusion by reaffirming and attempting to clarify our decision in *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372]. In my view, *Rocha* was wrongly decided, and has been a source of confusion that the majority opinion does not succeed in dispelling.[1] I would overrule *Rocha*, and hold that assault is a specific intent crime that requires that the defendant intend to injure the victim.

The crime of assault is defined by statute. Penal Code section 240 provides: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

As with all questions of statutory interpretation, the aim of the courts is to ascertain the intent of the Legislature, and to effectuate it. (E.g., *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].) Here, the legislative intent is clear from the legislative history.

Penal Code section 240 was enacted in 1872 and has never been amended. In enacting section 240, the Legislature followed the recommendation of the code commissioners who proposed it. When the Legislature follows the

---

[1] The confusion that continues despite the majority's opinion is illustrated by the differences between this opinion and Justice Mosk's concurring opinion. Justice Mosk's concurring opinion reads the majority as holding that the crime of assault requires an intent to injure. Because Justice Mosk agrees with this holding, he concurs with the majority. Although I agree with Justice Mosk that assault requires an intent to injure, the majority opinion does not, in my view, so conclude.

recommendations of a law revision commission without change, as it did with section 240, the comments of the commissioners provide strong evidence of the legislative intent. (See, e.g., *People* v. *Garfield* (1985) 40 Cal.3d 192, 199 [219 Cal.Rptr. 196, 707 P.2d 258].)

The code commissioners' note to Penal Code section 240 states in relevant part (and with all italics in the original): "INTENT TO STRIKE.—An assault has also been said to be an intentional attempt, by violence, to do an injury to the person of another. It must be *intentional*. If there is no present purpose to do an injury, there is no assault. There must also be an *attempt*. A purpose not accompanied by an effort to carry into immediate execution falls short of an assault. Thus no words can amount to an assault. But rushing towards another with menacing gestures, and with a *purpose to strike*, is an assault, though the accused is prevented from striking before he comes near enough to do so.—[Citations.] . . . So, where an Embassador [*sic*] exhibited a painting in the window of his house which gave offense to the crowd without, and defendant, among the crowd, fired a pistol at the painting at the very time when the Embassador [*sic*] and his servants were in the window to remove it, but did not intend to hurt any of them, and in fact did not [,] *Held*, that there being no intent to injure the person there could be no conviction for an assault. [Citations.]" (Code comrs. note foll. Ann. Pen. Code, § 240 (1st ed. 1872, Haymond & Burch, comrs.-annotators) pp. 104-105.)[2]

Accordingly, the intent to do an act likely to cause injury is insufficient for assault. The intent to commit an injury is required. "If there is no present purpose to do an injury, there is no assault." (Code comrs. note foll. Ann. Pen. Code, § 240, *supra*, at p. 104.)

If assault requires the intent to injure the victim, it must be a specific intent crime. In *People* v. *Hood* (1969) 1 Cal.3d.444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], this court explained the difference between specific and general intent: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent."

---

[2]The code commissioners' note proceeds to explain that the intent to injure may be conditional: "[T]hreatening another with a weapon, as a means of coercing him to yield to a demand, intending to strike if he refuses, but not to strike if he complies, is an assault, although the other party negotiates and no blow is finally given. It makes no difference that the purpose to commit violence is not absolute but only conditional." (Code comrs. note, *supra*, at p. 105; see also, *People* v. *McCoy* (1944) 25 Cal.2d 177, 192-193 [153 P.2d 315].)

In the case of assault, the injury to the victim is an "additional consequence" beyond the commission of the act itself: to be guilty of assault, a defendant who throws a punch at the victim must intend not only to swing, but also that the punch will have the additional consequence of injury to the victim. Assault is therefore a specific intent crime.

There is additional support for my conclusion that assault is a specific intent crime. Section 242 of the Penal Code defines a battery as "any willful and unlawful use of force or violence upon the person of another." Section 240 defines an assault as an unlawful *attempt*, coupled with a present ability, to commit a physical injury on another. In other words, an assault is an attempt to commit a battery, whether successful or not. Penal Code, section 21a has this to say about an attempt: "An attempt to commit a crime consists of two elements: *a specific intent* to commit the crime, and a direct but ineffectual act done toward its commission." (Italics added.) Accordingly, since assault is an attempt to commit a battery, and an attempt requires specific intent, the mental state element of assault is the specific intent to commit a battery.

In holding that assault is not a specific intent crime, the court in *People* v. *Rocha, supra,* 3 Cal.3d 893, on which the majority relies, may have overlooked the code commissioners' comments I referred to earlier, for they are not mentioned in *Rocha*. The majority attempts to resolve the "understandable analytical uncertainty" caused by *Rocha* (maj. opn., *ante*, at p. 215), but does not succeed, because it is impossible to logically explain how one may attempt to commit a battery without desiring to commit one. Therefore, we should not attempt to clarify *Rocha*, but should forthrightly overrule it.

Because, as I have shown, assault is a specific intent crime, it follows that in this case the jury instruction given—that "when an act inherently dangerous to others is committed with a conscious disregard of human life and safety . . . the intent to commit a battery is presumed"—was defective. Was it prejudicial on this record? No. My reasons follow.

Although the presumption affected the only element of the offense in issue, the error was harmless beyond a reasonable doubt, for the issue was necessarily resolved adversely to defendant under another, properly given instruction. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) Specifically, in instructing the jury on the allegation that defendant had inflicted great bodily injury, the trial court stated: "If you find a defendant guilty of assault with a firearm, you must determine whether or not such defendant, with the *specific intent* to inflict such injury, did personally inflict great bodily injury on [the victim]." (Italics added.) The jury

found the enhancement allegation to be true, and thus necessarily found that defendant had the specific intent to commit a physical injury on the victim.

Accordingly, I concur in the majority's affirmance of the judgment only.