Filed 6/18/15  P. v. Haro CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061222 |
| v. | (Super.Ct.No. SWF1300832) |
| CARLOS HARO, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Angel M. Bermudez, Judge.  Affirmed with directions.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Charles C. Ragland and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury found defendant and appellant Carlos Haro guilty of second degree robbery (Pen. Code, § 211; count 1),[1] making criminal threats (§ 422; count 2), second degree burglary (§ 459; count 3), and assault with a deadly weapon, a knife (§ 245, subd. (a)(1); count 4). The jury also found defendant personally used a knife in committing each crime. (§ 12022, subd. (b)(1).) Defendant admitted two prior serious felony convictions and two prior strike convictions (§ 667, subds. (a), (c), (e)(2)(A)) and was sentenced to 11 years plus 25 years to life in prison.

On this appeal, defendant claims the trial court prejudicially erred in refusing to instruct the jury on the defense of accident to the charge of assault with a deadly weapon in count 4. At trial, the evidence showed that on April 26, 2013, defendant went into the Moreno Market in Hemet, robbed the store, and assaulted and threatened to kill the store clerk, Beatriz Gomez, with a knife. The evidence indicated that defendant accidentally cut Gomez's arm with the knife during the robbery and assault. Defendant argues this evidence supported an instruction on accident, essentially telling the jury he was not guilty of assault with a deadly weapon if he accidentally cut Gomez.

We conclude the instruction was properly refused because insufficient evidence supported it. Though substantial evidence indicated that defendant may have accidentally and unintentionally cut Gomez's arm with the knife, there was no evidence that defendant accidentally *assaulted* Gomez with the knife.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant also claims the abstract of judgment contains a clerical error and must be corrected to show he was convicted of *second degree* robbery in count 1 rather than robbery *in concert*, as the abstract indicates.  The People concede the error.  We remand the matter to the trial court with directions to amend the abstract of judgment, as requested.  In all other respects, we affirm the judgment.

## II.  FACTUAL BACKGROUND

A.  *Prosecution Evidence*

On April 26, 2013, Gomez was working alone at the Moreno Market, a small grocery store in Hemet.  Around 7:30 p.m., Gomez was in the back of the store when she heard someone in the store calling for help and asking where to pay.  At that point, defendant, wearing a baseball hat and a bandanna over his mouth, ran up to Gomez, pointed a knife at her, and told her "it was not a game," to "hurry up," and to give him "all the money" in the cash register or he would kill her.  Defendant grabbed Gomez's blouse from behind and rushed her to the register near the front of the store.  On the way there, defendant was continually "trying to stab everywhere" with the knife and "cutting everywhere he was seeing," including food items and small coolers.

At the register, defendant stood behind Gomez's right side and, while still pointing the knife at her, told her to open the register.  As Gomez was opening the register, defendant told her to "open it faster" and cut her right arm with the knife.  The cut bled, but it was small and did not require stitches or medical attention.  Defendant took the money from the register and the money in Gomez's purse, then left the store through the

3

front door. Gomez began to call 911, then looked outside and saw that defendant was on a bike and the police were already there.

Officer Douglas Klinzing of the Hemet Police Department was on his way home from work, driving a marked police car and still in uniform, when he noticed defendant walk quickly out of the Moreno Market, "holding a bandan[n]a over his face and holding his waistband area." Defendant pulled the mask away from his face and walked towards a bicycle, then jumped on the bicycle and "started to pedal off as quickly as he could," after making eye contact with the officer. The officer pulled into the parking lot and began following defendant. Gomez then came out of the market, waving frantically and pointing at defendant. Defendant did not yield after the officer activated his emergency lights and siren, and the officer called for backup. Officer Klinzing followed defendant onto State Street, and defendant kept turning around and looking at the officer.

Officer Klinzing continued following defendant. Several blocks away from the market, defendant stopped at a house, jumped off his bicycle, and ran inside the house after ignoring the officer's order to "[s]top." Other officers arrived and apprehended defendant inside the house. The baseball hat defendant was wearing was found inside a sink in the washroom, the bandanna was inside a toilet, and Gomez's wallet and cash were inside the refrigerator.

Daniel O'Connell was working across the street from the Moreno Market when he "heard . . . car tires squealing" and noticed a police car following a man on a bicycle. As he walked over to the market, O'Connell found a knife on the ground between two

4

parked cars, near where the man on the bicycle had passed.  At the market, Gomez told O'Connell she had just been just robbed and showed him her cut which he saw had "a little bit of blood."

B.  *Defense Evidence*

Defendant testified in his own defense.  He was 52 years old at the time of trial in February 2014 and had lived in Hemet for 18 years.  He began using drugs when he was 15 years old, and began using methamphetamine, heroin, and cocaine in his early 20's.  At the time of the robbery, he was homeless and living on the streets because he had lost his job as a cook.  He had no recollection of the robbery or the events of April 26, 2013.  He only recalled sleeping on the streets and suddenly waking up in jail.  During the two-week period before the robbery, he was using methamphetamine, heroin, marijuana, and alcohol on a daily basis; he had not eaten and had slept very little.  After viewing the surveillance videotape from the robbery, defendant admitted he went into the market, armed with a knife, to steal money.

Dr. William Jones, a psychologist, testified for the defense.  To prepare for his testimony, Dr. Jones reviewed information about methamphetamine and other drugs, the police reports, and the preliminary hearing transcript in the case.

Dr. Jones testified that one-third of long-term methamphetamine addicts end up with methamphetamine psychosis, a condition similar to paranoid schizophrenia, in which individuals "hallucinate, hear voices" and have paranoid delusions.  Because the human brain needs a minimum amount of sleep to function and because

5

methamphetamine is a stimulus, methamphetamine addicts may stay awake for several days at a time. People who lose sleep for several days "can get distortions [in their] thinking, it's hard to tell reality."

It is also "fairly common" for long-term alcoholics to have "blackouts." In a blackout, the person "continues to function" as if they are awake but they do not recall what happened. They "may do things that are not characteristic of them during an alcohol blackout." Because heroin, marijuana, and alcohol are "downer-type" drugs and methamphetamine is a stimulant, a person using a combination of all these drugs would be less likely to pass out, but their judgment and self-control would probably be poorer. Long-term drug and alcohol use can lead to blackouts, bizarre behaviors, and psychosis.

C. *The Requested Instruction on Accident*

Following the close of the evidence, defense counsel asked the court to instruct the jury on accident as a defense to the charge in count 4 of assault with a deadly weapon, by using CALCRIM No. 3404. Counsel argued that the evidence supported an inference that defendant accidentally cut Gomez's arm as the two of them were standing by the register. Counsel pointed out that when Gomez moved to open the register, defendant was moving toward the register at the same time, and, at that point, the knife apparently "came down" and accidentally inflicted the small cut on Gomez's arm. The prosecutor objected to instructing the jury on accident on the ground that assault with a deadly weapon is a general intent crime and does not require an intent to inflict injury, and based

6

on the surveillance videotape, the assault was not an accident.  The trial court refused to give the instruction because insufficient evidence supported it.

### III.  DISCUSSION

A. *The Instruction on Accident Was Properly Refused*

As indicated, defendant claims the court prejudicially erred in refusing to instruct the jury on accident as a defense to the charge that he assaulted Gomez with a knife.  As we explain, the instruction was properly refused.

1. Applicable Legal Principles

Accident is a statutory defense.  Section 26 provides:  "All persons are capable of committing crimes except . . . .  [¶]  . . .  [¶]  Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."  Generally, the defense of accident amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.  (*People v. Anderson* (2011) 51 Cal.4th 989, 996-998.)  As CALCRIM No. 3404 explains, a defendant "is not guilty of" a charged crime if he or she acted "without the intent required for that crime, but acted instead accidentally."

A trial court does not have a duty to instruct on the defense of accident sua sponte.  (*People v. Anderson*, *supra*, 51 Cal.4th at pp. 997-998.)  Instead, the court's duty to instruct on accident, "generally extends no further than the obligation to provide, *upon request*, a pinpoint instruction relating the evidence to the mental element required for the charged crime."  (*Id*. at p. 997.)  "Pinpoint instructions 'relate particular facts to a legal

7

issue in the case or "pinpoint" the crux of a defendant's case . . . .'" (*People v. Wilkins* (2013) 56 Cal.4th 333, 348-349.) But pinpoint instructions are not required to be given, even upon request, unless substantial evidence supports them. (*People v. Enraca* (2012) 53 Cal.4th 735, 760; *People v. Ward* (2005) 36 Cal.4th 186, 214.)

Assault with a deadly weapon is a general intent crime. (*People v. Colantuono* (1994) 7 Cal.4th 206, 215-216.) An assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "The mens rea [required for assault] is established upon proof the defendant willfully committed an act that by its nature will probably and directly result in injury to another . . . ." (*People v. Colantuono*, *supra*, at p. at 214.) The defendant must actually "be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." (*People v. Williams* (2001) 26 Cal.4th 779, 788 & fn. 3.) No touching or intent to harm the victim is required in order to commit an assault. (*People v. Colantuono*, *supra*, at pp. 214-215.)

2. There Was No Instructional Error

Here, we agree that substantial evidence showed that defendant accidentally and unintentionally cut Gomez's arm with the knife he was wielding as Gomez removed the money from the cash register. As defendant points out, the cut was minor, and defendant could have accidentally brought the knife down on Gomez's arm as he stood behind her, "flailing a knife around." Still, the evidence that the cut was accidental was utterly insufficient to support an instruction on the defense of accident to the charge of assaulting

8

Gomez with the knife. The evidence that defendant did not intend to cut Gomez in no way indicated that defendant was unaware he was assaulting Gomez with the knife. Further, defendant was not required to intentionally cut Gomez in order to commit the assault. (See *People v. Colantuono*, *supra*, 7 Cal.4th at pp. 214-215.)

Simply put, there was no evidence defendant *accidentally assaulted* Gomez with the knife. The evidence showed that, while accosting and holding Gomez at knifepoint, defendant threatened to kill Gomez if she did not give him the money from the register. There is no way the assault was an accident—even if defendant did not recall committing the crime. In sum, defendant was not entitled to an instruction that he was *not guilty* of the assault if the jury found he accidentally cut Gomez with the knife.

B. *Defendant's Abstract of Judgment Must Be Corrected*

Lastly, defendant claims his abstract of judgment contains a clerical error: it indicates defendant was convicted of robbery "[i]n [c]oncert" in count 1 when, in fact, he was convicted of second degree robbery in count 1. The People concede the error. We therefore remand the matter to the trial court with directions to correct the error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [a court has inherent authority to correct clerical errors in its records].)

IV. DISPOSITION

The matter is remanded to the trial court with directions to prepare an amended abstract of judgment indicating that defendant was convicted in count 1 of second degree robbery rather than robbery "[i]n [c]oncert." The trial court is further directed to forward

9

a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.

10