Filed 6/2/11

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

        Plaintiff and Respondent,

        v.

PAUL D. ANDERSON,

        Defendant and Appellant.

S175351

Ct.App. 4/1 D054740

Riverside County
Super. Ct. No. RIF113459

        We hold here that the intent element of robbery does not include an intent to apply force against the victim or to cause the victim to feel fear. It is robbery if the defendant committed a forcible act against the victim motivated by the intent to steal, even if the defendant did not also intend for the victim to experience force or fear. We also hold a trial court has no obligation to provide a sua sponte instruction on accident where, as here, the defendant's theory of accident is an attempt to negate the intent element of the charged crime.

## BACKGROUND

        Defendant Paul D. Anderson is a longtime methamphetamine addict. As of the time of the crimes at issue here, he had been out of work for a year, was separated from his wife, had neither a job nor a car, and was living on the streets or spending nights in the homes of other methamphetamine users. He obtained money by breaking into cars, sometimes by means of a shaved key, and stealing things. He used stolen credit cards and sometimes tried to pass forged checks. He

1

had once stolen a car. Defendant's criminal history does not appear to have involved any act of force or violence directed against his victims.

Defendant spent the morning and afternoon of November 7, 2003, at the home of Ginger Lyle, a drug dealer, where he smoked methamphetamine and socialized with Lyle and several other users. After leaving Lyle's home, he went to an apartment complex a few blocks away, later stating he went with the intention of finding a car to steal so he could visit his wife and children.

On November 7, 19-year-old Pamela Thompson came home from work around 9:00 p.m. She parked her car in the apartment complex's carport and went to her apartment to change her clothing before going out, leaving her purse in the car. In the meantime, defendant entered the complex looking for a car he could enter with his key. After failing to break into several cars, defendant successfully opened the door to Pamela's car, started it, and attempted to drive out of the complex. After discovering the gate to the complex did not open automatically, defendant backed the car into a parking space to wait for someone else to open the gate. By this time, Pamela had discovered her car was gone. She telephoned her stepfather, Joe Deitz, asking if he had taken it. When he said he had not, she told him the car had been stolen. Pamela also called her mother, Barbara Thompson, telling her the car had been stolen and she was looking for it. After they spoke for a few minutes, Barbara heard Pamela say, loudly, "Oh, my God. Here comes my car real fast." The phone went silent. A moment later Barbara's telephone indicated someone was on another line. It was Joe, calling for information about the car. Barbara told him something had happened to Pamela out at the gate. Joe ran to the gate where he found Pamela lying in a puddle of blood on the street near the drive that led into the apartment complex. Pamela was still conscious, but was struggling for breath and stopped breathing shortly after Joe found her. Joe performed CPR (cardiopulmonary resuscitation) until paramedics arrived. Pamela

2

never regained consciousness and died a few days later. She had suffered multiple blunt-force traumas resulting in multiple skull and rib fractures, injuries consistent with having been crushed by a car traveling the length of her body.

Witnesses reported hearing the sound of a car and a female voice in what seemed to be an argument that went on for perhaps 20-30 seconds. The voice shouted "Stop!" three times, after which there was a very loud thump and the shouting stopped. The witnesses heard the car accelerate, but were not certain whether the acceleration occurred before or after the thump. They heard the car's tires screech as it left the complex.

Defendant had run over Pamela. He did not deny hitting her, but claimed it was an accident. He stated he saw the gate to the complex open to admit a car. After the car passed, he drove toward the gate, which began to close. He drove quickly around the gate, estimating his speed at 25-30 miles per hour. He claimed he had not heard anyone shout, explaining the car's windows were closed. He stated he had kept his head down as he was driving, theorizing that for that reason, and because it was night and the gate obscured his vision, he had not seen anything until he looked up and saw Pamela standing just outside the gate, approximately 10-12 feet from him, with her hand up. He swerved, explaining he did not think he could stop in time. Defendant admitted feeling an impact, stating he thought he might have struck the girl, but he also thought it was possible she had hit the side of the car or he had gone up over the curb. He was frightened, did not stop to see if he had injured anyone, and drove away without looking back. Defendant maintained he had not intended to run over, injure, or frighten anyone. He had been thinking about getting away and had not contemplated the possibility that someone might be on the other side of the gate.

Defendant quickly abandoned the car, but took from it a credit card and driver's license belonging to Pamela. He was arrested several days later after having used the credit card several times.

Defendant was convicted, following a jury trial, of first degree felony murder with the special circumstance of killing during the course of a robbery (Pen. Code, §§ 187, 190.2, subd. (a)(17)(A)), robbery (*id.*, § 211), and receipt of stolen property (*id.*, § 496, subd. (a)). He appealed, arguing that the trial court erred by failing to provide a sua sponte instruction on accident as a defense to the crime of robbery, thus requiring reversal not only of his robbery conviction, but also of his conviction of first degree felony murder and the special circumstance.[1] The Court of Appeal agreed. We reverse the judgment of the Court of Appeal.

## DISCUSSION

### I. Robbery

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) Robbery is larceny with the aggravating circumstances that "the property is taken from the person or presence of another" and "is accomplished by the use of force or by putting the victim in fear of injury." (*People v. Gomez* (2008) 43 Cal.4th 249, 254, fn. 2.) In California, "[t]he crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety." (*People v. Estes* (1983) 147 Cal.App.3d 23, 28.) It thus is robbery when the

---

[1] The only intent required for felony murder is the specific intent to commit the underlying felony. (*People v. Booker* (2011) 51 Cal.4th 141, 175.) Thus, for purposes of first degree felony murder, it is irrelevant that Pamela's death might have been the accidental result of a robbery, if the robbery was intentional.

property was peacefully acquired, but force or fear was used to carry it away. (*Gomez*, at pp. 255-256.)

"As a general rule, no crime is committed unless there is a union of act and either wrongful intent or criminal negligence. [Citations.] This rule, which is 'firmly embedded' in ' "the principles of Anglo-American criminal jurisprudence" ' [citation] is so basic that wrongful intent or criminal negligence 'is an invariable element of every crime unless excluded expressly or by necessary implication' [citations] and 'penal statutes will often be construed to contain such an element despite their failure expressly to state it' [citations]." (*People v. King* (2006) 38 Cal.4th 617, 622-623; and see Pen. Code, § 20 ["In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."].) The intent required for robbery has been described as the specific intent to deprive the victim of the property permanently. (*People v. Huggins* (2006) 38 Cal.4th 175, 214; *People v. Guerra* (1985) 40 Cal.3d 377, 385.) Thus, "the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal . . . ." (*People v. Green* (1980) 27 Cal.3d 1, 54.)

Defendant concedes he committed a forcible act against Pamela, killing her, and that the act was motivated by his intent to steal Pamela's property. But he argues the forcible taking was not robbery unless he applied the force with the intent to strike or frighten Pamela. He cites *People v. Bolden* (2002) 29 Cal.4th 515, where we recognized that the standard jury instructions adequately explain that "for the crime of robbery the defendant must form the intent to steal before or during rather than after the application of force to the victim, and *that the defendant must apply the force for the purpose of accomplishing the taking*." (*Id.* at p. 556, italics added.) But we were not there concerned with whether the defendant intended to harm the victim, and our explanation that it is not robbery if

5

the intent to steal is formed only after the forcible act was committed cannot reasonably be read to hold that the act by which the taking is accomplished must be motivated by the intent to apply force against the victim or cause the victim to feel fear.

Other cases cited by defendant also are not on point, explaining instead that the requisite forcible act may be an act committed after the initial taking if it is motivated by the intent to retain the property. (E.g., *People v. Gomez*, *supra*, 43 Cal.4th at p. 265 [evidence the defendant shot at the victim after taking the victim's property supported the jury's determination that the defendant used force to retain the property]; *People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8 [theft becomes robbery if the perpetrator peaceably gains possession but "resorts to force or fear while carrying away the loot"]; *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 222 [it is robbery "where the perpetrator peacefully acquires the victim's property, but then uses force to retain or escape with it"]; *People v. Estes*, *supra*, 147 Cal.App.3d at p. 29 [it is sufficient that the defendant uses force to prevent the retaking of the property and to facilitate his escape].) None of these cases holds it is not robbery unless the act of force or intimidation was motivated by an intent to apply force against the victim or to cause the victim to experience fear.

In sum, no authority cited to us provides positive support for defendant's argument. Nor do we find anything in the law, or the facts of this case, to convince us robbery contains a heretofore unidentified element of intent to cause the victim to experience force or fear. The law does require that the perpetrator exert some quantum of force in excess of that "necessary to accomplish the mere seizing of the property." (*People v. Morales* (1975) 49 Cal.App.3d 134, 139; accord, *People v. Burns* (2009) 172 Cal.App.4th 1251, 1258-1259.) But even under his version of the facts, defendant drove Pamela's car with more force than

6

necessary to move it to a place of safety. And his motive for exerting the additional force was to retain the property and facilitate his escape. In short, he committed the requisite forcible act with the requisite intent. It was robbery even if, as he claims, he did not intend to strike Pamela, but did so accidentally.[2]

## II. Accident and Duty to Provide Sua Sponte Instruction on Accident

We turn now to the question of whether trial courts generally have a duty to instruct on accident, sua sponte, when the issue is raised by the evidence. We conclude they do not.

Penal Code section 26 states the statutory defense: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." The defense appears in CALCRIM No. 3404, which explains a defendant is not guilty of a charged crime if he or she acted "without the intent required for that crime, but acted instead accidentally." That the law recognizes a defense of accident does not, however, establish that trial courts have a duty to instruct on accident sua sponte. "In criminal cases, even in

---

[2]    In a supplemental brief, defendant argues that because robbery is sometimes described as an assaultive crime, it must be concluded it not only requires an intent to steal, but also has an intent element comparable to the intent required for assault. He cites *People v. Alvarez* (1996) 14 Cal.4th 155, where we observed, "[r]ape is an assaultive crime against the person, as are robbery and murder." (*Id.* at p. 188.) That an offense has assaultive aspects does not mean it *is* an assault. In any event, even under defendant's version of the facts, the evidence defendant drove blindly through the gates of the apartment complex at a speed of 25-30 miles per hour and made no effort to brake when he saw Pamela established the requisite willful commission of an act that by its nature was likely to result in injury to another. (See *People v. Williams* (2001) 26 Cal.4th 779, 780; *People v. Colantuono* (1994) 7 Cal.4th 206, 217-218.)

7

the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) That duty extends to " 'instructions on the defendant's theory of the case, including instructions "as to defenses ' "that the defendant is relying on . . . , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' " ' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.) But " 'when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a "pinpoint" instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such "pinpoint" instructions are not required to be given *sua sponte* and must be given only upon request.' " (*People v. Saille* (1991) 54 Cal.3d 1103, 1117.)

One commentator opines that statutory provisions codifying "a defense for an actor who commits the act or omission constituting an offense 'through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.'. . . [¶] . . . have historical significance, [but] are now unnecessary restatements, in a defense format, of the requirements of the definitional elements of an offense. To say that it is a defense that the criminal conduct or omission was committed by a non-negligent accident, is simply to say that all result element offenses [i.e., offenses that require an intent to produce a particular result] require at least proof of negligence as to causing the prohibited result. This is already made clear by the culpability requirements of specific offense definitions . . . ." (1 Robinson, Criminal Law Defenses (1984) Accident or Misfortune, § 63, p. 269, fns. omitted.) A trial court's responsibility to instruct on

8

accident therefore generally extends no further than the obligation to provide, *upon request*, a pinpoint instruction relating the evidence to the mental element required for the charged crime.

The California cases that have discussed the "defense" of accident, including those cited by defendant, generally support the commentator's view.  In *People v. Jennings* (2010) 50 Cal.4th 616, 674, we explained, "[g]enerally, the claim that a homicide was committed through misfortune or accident 'amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime.' "  In *People v. Acosta* (1955) 45 Cal.2d 538, this court reversed a conviction of willfully, unlawfully, and feloniously driving and taking a vehicle without the consent of the owner and with the intent to deprive the owner of title to and possession of the vehicle.  The defendant had been in the backseat of a taxi when the taxi driver, believing himself to be under attack by the defendant, rolled out of the moving vehicle.  The defendant then either climbed into the front seat and got behind the wheel of the taxi or attempted to steer the taxi from the backseat.  This court found it would be accident if the defendant did not intend the criminal act—driving the taxi—or if the act had not been motivated by an intent to deprive the owner of title and possession of the vehicle.  (*Id.* at pp. 543-544.)  We thus recognized the "defense" would rebut the prosecution's proof of a mental element of the crime.

In *People v. Gonzales* (1999) 74 Cal.App.4th 382, the defendant was convicted of the willful infliction of corporal injury on a cohabitant.  Under the defense version of the events, the complaining witness's injuries were caused when the defendant opened a door to gain entry into a room the victim was leaving and, without intending to do so, struck the victim in the face with the door.  (*Id.* at p. 390.)  The accident defense was raised to negate the mental element of the crime:  the intent to inflict corporal injury.  In *People v. Lara* (1996) 44

9

Cal.App.4th 102, the court found the defense of accident was available in a prosecution for battery ("any willful and unlawful use of force or violence upon the person of another" (Pen. Code, § 242)), when there was evidence the defendant accidentally injured the victim while turning around in an attempt to free himself from her grasp. The court explained: "The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime." (*Lara*, at p. 110.) In *People v. Jones* (1991) 234 Cal.App.3d 1303, a prosecution for attempted murder, there was evidence the defendant pointed a shotgun at an investigating police officer but did not intend to fire it; the shotgun discharged as the officer attempted to knock it aside. The court found the defense of accident was available because there was evidence from which a reasonable juror could have concluded the defendant did not intend to discharge the firearm. (*Id.* at p. 1314.) Similarly, in *People v. Garnett* (1908) 9 Cal.App. 194, the court reasoned it would not have been murder if the shot that killed the victim resulted from the accidental discharge of the defendant's gun. (*Id.* at pp. 203-204.)

In each case, the defense of accident was raised to rebut the mental element of the crime or crimes with which the defendant was charged. Consequently, assuming the jury received complete and accurate instructions on the requisite mental element of the offense, the obligation of the trial court in each case to instruct on accident extended no further than to provide an appropriate pinpoint instruction upon request by the defense.[3]

---

[3]    The convictions in *People v. Gonzales*, *supra*, 74 Cal.App.4th at page 390, and *People v. Jones*, *supra*, 234 Cal.App.3d at page 1314, were reversed for the failure to provide instructions on accident sua sponte. In each case, the defendant would have been entitled to a pinpoint instruction relating his theory of accident to the evidence of intent, but only *upon request*. (See *People v. Roldan* (2005) 35

(*footnote continued on next page*)

### III. Application to the Present Case

The trial court instructed the jury with CALCRIM No. 1600, explaining, as relevant, that the prosecution was required to show "the defendant used force or fear to take the property, or to prevent the person from resisting [and also that] when the defendant used force or fear to take the property, he intended to deprive the owner of it permanently, or to remove it from the owner's possession—or to remove it from the owner's possession [so] that the owner would be deprived of the major portion of the enjoyment or value of the property. [¶] The defendant's intent to take property must have been formed before or during the time he used force or fear. . . . [¶] . . . The use of force or fear can occur with the initial taking of the property, or it can occur while the defendant attempts to get away with the stolen property." The instruction explains the act and the intent elements of the offense and that the act must have been motivated by the requisite intent: the intent to steal. (Pen. Code, § 211; *People v. Green*, *supra*, 27 Cal.3d at p. 54.) As defendant's theory of accident concerning the use of force added a nonexistent element of intent to the offense, an instruction on that theory would have been improper even upon defense request.

But defendant argues that even if the instruction adequately explained the intent element for robbery, the jury likely was confused because it was also instructed with CALCRIM No. 540A: "A person may be guilty of felony murder even if the killing was unintentional, accidental or negligent." That argument, like the others defendant has advanced, is premised on the theory that accident, in the

---

(*footnote continued from previous page*)

Cal.4th 646, 715.) We disapprove *People v. Gonzales*, *supra*, 74 Cal.App.4th 382, and *People v. Jones*, *supra*, 234 Cal.App.3d 1303, to the extent they hold a sua sponte instruction on accident is required when the defense is raised to negate the intent or mental element of the charged crime.

sense that it represents the absence of an intent to cause the victim to experience force or fear, is a defense to robbery. As we have explained, that theory is incorrect. The instruction could not have caused the jury to fail to consider a potentially meritorious defense.

## CONCLUSION

The judgment of the Court of Appeal is reversed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**WOODS, J.**[*]

---

[*]    Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY KENNARD, J.**


Robbery is statutorily defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code § 211; further undesignated statutory references are to the Penal Code.) Here, defendant Paul D. Anderson was charged not only with the felony of robbery but also with first degree felony murder because a killing occurred during the robbery. (§ 189.) To establish first degree felony murder, the prosecution had to prove defendant's commission of the robbery. Defendant claimed that his use of force in taking the victim's property was "an accident," but he did not ask for a jury instruction on that theory. The jury found defendant guilty as charged.

On appeal, defendant faulted the trial court for not instructing the jury, without request, on the defense theory of "accident," that is, if the jury were to conclude that defendant's use of force in taking the victim's property was not intentional, it would have to acquit him of robbery and of felony murder based on robbery. The Court of Appeal agreed. It held that robbery requires "a purposeful or willful act involving a general intent to use force" (italics omitted); thus, if defendant's use of force was truly accidental, he lacked the general intent that in the Court of Appeal's view is required for robbery. The Court of Appeal also held that the trial court erred in not so instructing the jury even though the defense had

1

not requested such an instruction.  (This latter issue was the basis for this court's grant of review.)

The majority reverses the Court of Appeal.  The majority holds, and I agree, that a claim of an act being an "accident" is a defense that, at most, negates a mental element of an offense, and thus is not the type of defense warranting a jury instruction by the trial court without a request by the defendant.  (Maj. opn., *ante*, at pp. 7-11.)  This is true so long as the trial court has given "complete and accurate instructions on the requisite mental element of the offense."  (*Id.* at p. 10.)

What then is the "requisite mental element" here?  According to the Court of Appeal, it is the general intent to use force in taking another's property.  That court concluded that the use of such force in taking property from the possession of another is the " 'central element' " of robbery, and that therefore the crime must require "*a purposeful or willful act* involving *a general intent to use force or fear* to initially take the property or thereafter retain the stolen property.*"  The majority disagrees, stating that a general intent to use force is *not* an element of robbery.  (Maj. opn., *ante*, at pp. 4-7.)  (We did not grant review to decide this issue but later asked the parties to brief it.)

The Court of Appeal's reasoned determination that robbery requires a general intent to use force in taking property from another person's possession cannot be dismissed lightly, as the majority seems to do.  But I see no need to decide that issue in this case because in my view the trial court's failure to instruct the jury on general intent could not have prejudiced defendant.

## I

As relevant here, robbery occurs when a person uses force to take property from another's possession or immediate presence.  (§ 211; *People v. Bolden* (2002) 29 Cal.4th 515, 556.)  The use of force need not be contemporaneous with the taking, however; a robbery also occurs if, after taking the property, the taker

2

exerts force when the owner tries to regain possession. (*People v. Gomez* (2008) 43 Cal.4th 249, 255-256; *People v. Estes* (1983) 147 Cal.App.3d 23, 28 [a robbery occurred when the defendant shoplifted from a store and then, when confronted by a security guard who demanded return of the stolen property, pulled a knife].) The use of force that followed the forceless taking in *Estes* is similar to what occurred here.

Defendant, without permission, took a car belonging to 19-year-old Pamela Thompson from its parking stall in the carport of a large apartment complex, and then drove it toward the exit's security gate. Meanwhile, Thompson had entered the carport and discovered her car missing. Thompson, using her cellular phone, told her mother that someone had taken her car. As Thompson, still on the phone with her mother, headed toward the complex's exit gate, she exclaimed: "Oh, my God. Here comes my car real fast." She then yelled at the driver to stop. At this point, someone entering the apartment complex activated the security gate, which led defendant to accelerate the car so he could clear the gate before it closed. In the process, defendant ran over Thompson, killing her.

At trial, defendant admitted stealing Thompson's car. But he claimed that he had not seen Thompson (who was standing some 10 feet in front of the car) until seconds before the collision, that he swerved the car to avoid hitting her, and that his intent in speeding out the security gate was not to use force against Thompson but to leave the apartment complex as fast as he could.

The Court of Appeal held that, in light of defendant's testimony, the trial court had a duty, without defense request, to instruct the jury that defendant could not be guilty of robbery if his use of force against Thompson was an accident. In other words, if defendant lacked a general intent to use force against Thompson when getting away with her car, he did not commit a robbery. This court disagrees. It holds that a trial court need not instruct on the defense of accident on

3

its own initiative, so long as "the jury received complete and accurate instructions on the requisite mental element of the [charged] offense." (Maj. opn., *ante*, at p. 10.) I agree. But the majority further holds that the crime of robbery does not require any intent to use force in taking another's property. I am not convinced. As discussed in part II below, leading criminal law treatises describe robbery as a combination of two distinct crimes: theft and assault. If that is correct, then it follows that proof of a robbery would require proof of *all* of the elements of the crimes of theft and assault; the latter requires a general intent to use force. (*People v. Colantuono* (1994) 7 Cal.4th 206, 218 (*Colantuono*); see also *People v. Williams* (2001) 26 Cal.4th 779, 784 (*Williams*).)

## II

Long before the California Legislature in 1872 codified the crime of robbery in Penal Code section 211, the common law defined robbery as a "[larceny] from the person" committed "by open and violent assault." (4 Blackstone, Commentaries 241.) Rather recent editions of leading criminal law treatises have embraced that common law view. (Perkins & Boyce, Criminal Law (3d ed. 1982) Offense Against Property, § 2, p. 350 [describing robbery as a "compound offense" made up of both theft and assault]; 4 Wharton's Criminal Law (15th ed. 1996) § 454, p. 5 [stating that robbery typically "consists of a battery plus larceny or an assault plus larceny"]; 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 86, p. 115 [describing robbery as a "combination of assault and larceny"].)

Did the common law definition of robbery as consisting of both assault and theft find its way into California's robbery statute when it was enacted in 1872? If so, all the elements of those two distinct crimes would be included within the crime of robbery. Robbery includes the mental element necessary to prove theft, the specific intent to permanently deprive the owner of the property. (*People v.*

4

*Bacon* (2010) 50 Cal.4th 1082, 1117; *People v. Montoya* (2004) 33 Cal.4th 1031, 1037.) No one disputes this here. With respect to the crime of assault (§ 240), it requires a general intent "to commit an act likely to result in . . . physical force," that is, "a general intent to attempt to commit the violence." (*Colantuono*, *supra*, 7 Cal.4th 206, 218; see also *Williams*, *supra*, 26 Cal.4th 779, 782 ["clarify[ing]" the *Colantuono* rule as requiring "actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another"].) This general intent for assault, the Court of Appeal here held, was also required to prove the use of force in a robbery. As the Court of Appeal reasoned, because the use of force in taking property from another's possession is the "central element" of robbery (*People v. Ramos* (1982) 30 Cal.3d 553, 589), it follows that robbery "requires *a purposeful or willful act* involving a *general intent to use force or fear* to initially take property or thereafter retain the stolen property."

Whenever a court needs to construe the meaning of statutory language, it must determine and give effect to the intent of the Legislature. (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304; *Klein v. United States of America* (2010) 50 Cal.4th 68, 77.) Here, the Court of Appeal, in concluding that robbery requires a general intent to use force in taking another's property, did not consider whether that was the Legislature's view when in 1872 it enacted the robbery statute.

Likewise, the majority in holding that robbery does not require any intent to use force, does not consider whether that was the 1872 Legislature's view. Instead, in arriving at that holding, the majority discusses several cases relied on by defendant (maj. opn., *ante*, at pp. 5-6), decides they do not hold that robbery includes any intent to use force (*id.*, at p. 6 ["no authority cited to us provides positive support for defendant's argument"]), and concludes that therefore the

5

opposite must be true, namely, that robbery does not require an intent to use force (*id*., pp. 6-7).

The task of ascertaining the 1872 Legislature's intent could well have been daunting. (See, e.g., *People v. Evans* (2008) 44 Cal.4th 590, 596-597 [consulting 19th century British and American treatises to determine the 1872 Legislature's intent in enacting Penal Code section 1200, pertaining to a defendant's right to allocution].) But it is called for in light of the divergent views of the Court of Appeal and of this court's majority on the issue of intent to use force in obtaining or maintaining another person's property.

Under my approach — assuming that, as the Court of Appeal held, the trial court erred in not instructing without a defense request on general intent to use force, I perceive no prejudice to defendant — a determination of legislative intent in enacting the robbery statute is not necessary. Below, I discuss this.

**III**

As noted earlier on page 2, the majority's determination (with which I agree) that a trial court need not on its own initiative instruct the jury on a defense of "accident" hinges on the trial court having given proper instructions on the requisite intent for the underlying offense. (Maj. opn., *ante*, at p. 10.)

Here, assuming, as the Court of Appeal held, that the crime of robbery requires a general intent to use force in taking another's property, the jury would not have been able to determine whether defendant had that intent, because the trial court failed to tell the jury (1) that robbery requires such intent, or (2) that if defendant's use of force was accidental, this would negate the requisite intent.

Instructional error that withholds an element of an offense from the jury is of federal constitutional dimension. (*Neder v. United States* (1999) 527 U.S. 1, 15.) In that situation, the inquiry is whether " 'beyond a reasonable doubt' " the error " 'did not contribute to the verdict.' " (*Ibid*; see also *Chapman v. California*

6

(1967) 386 U.S. 18, 24.)  This standard is satisfied when it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (*Neder*, at p. 18.)

Here, defendant could not have been prejudiced by any error of the trial court in not submitting to the jury the issue of general intent to use force, which according to the Court of Appeal is an element of robbery.  Defendant testified that he noticed Thompson's presence some 10 feet ahead as he was driving her car toward the closing security gate at 25 to 30 miles per hour.  By his own admission, defendant never tried to stop the car but only "swerved" in an effort to avoid Thompson, who was trying to stop him from driving away in her car.  Defendant's conduct was sufficient to establish a general intent to attempt to "commit the violence," that is, to use the force necessary to commit the harm, the standard that a majority of this court articulated in *Colantuono*, *supra*, 7 Cal.4th at page 218, as the mental element for the crime of assault.  (See p. 4, *ante*, regarding the view that robbery is comprised of both theft and assault.)  And defendant's conduct likewise satisfies the general-intent-for-assault standard described by the majority in *Williams*, *supra*, 26 Cal.4th at page 790, that is, "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."[1]

---

[1]    I disagreed with the majority of the court in both *Colantuono* and *Williams*. My separate opinion in *Colantuono* concluded that assault (§ 240) requires a more stringent form of intent, that is, the specific intent to commit a violent injury against another.  (See *Colantuono*, *supra*, 7 Cal.4th at pp. 225-228 (conc. & dis. opn. of Kennard, J.).)  My separate opinion in *Williams* concluded that the majority there, in describing the mental element for assault, had reduced the required mental state from general intent to criminal negligence and thus was "not faithful" to the majority opinion in *Colantuono*.  (*Williams*, *supra*, 26 Cal.4th at p. 795; see *id*. at pp. 791-797 (dis. opn. of Kennard, J.).)

Accordingly, if a rational jury that accepted defendant's version of the facts was instructed that the general intent required for assault is an element of robbery (an instruction that the Court of Appeal viewed as being required here), that jury would conclude that defendant committed the felony of robbery as well as a robbery murder when he ran over and killed car owner Thompson in order to get away in the car he had stolen from her. Hence, the trial court's failure to submit to the jury the issue of general intent to use force against Thompson could not, beyond a reasonable doubt, have contributed to the verdict. (*Neder v. United States*, *supra*, 527 U.S. at p. 15.)

On this basis, I conclude that the Court of Appeal erred in reversing defendant's convictions, and I concur in the majority's reversal of the Court of Appeal.

KENNARD, J.

8

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Anderson

_____

**Unpublished Opinion** XXX NP opn. filed 7/2/09- 4th Dist., Div. 1
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S175351
**Date Filed:** June 2, 2011

_____

**Court:** Superior
**County:** Riverside
**Judge:** Richard J. Couzens

_____

**Counsel:**

Richard A. Levy, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala G. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting, Pamela Ratner Sobeck and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard A. Levy
21535 Hawthorne Blvd., Suite 200
Torrance, CA  90503-6612
(310) 944-3311

James H. Flaherty III
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2196