Filed 6/2/15  In re E.R. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.R., a Person Coming Under the Juvenile Court Law. | H041176 (Santa Clara County Super. Ct. No. 3-14-JV40452) |
| THE PEOPLE, Plaintiff and Respondent, v. E.R., Defendant and Appellant. | |

The Santa Clara County District Attorney filed a petition (Welf. & Inst. Code, § 602, subd. (a)), which alleged that E.R., who was then 14 years old, committed a misdemeanor battery (Pen. Code, §§ 242, 243, subd. (a)).  Following a contested jurisdictional hearing, the juvenile court sustained the petition.  The juvenile court placed the minor on probation on condition that, among other things, he serve 60 days on the electronic monitoring program and participate in wraparound services.  The minor filed a timely notice of appeal.  He contends that he received ineffective assistance of counsel.  We affirm the order.

## I. Statement of Facts

### A. Prosecution Case

The present case involved an argument between the minor and his mother's boyfriend C.L. It ended when the minor threw a pot of beans at C.

C. had been a family friend for 20 years. About five years before the incident, the minor's mother Maria I. divorced his father. Six to eight months after the divorce, Maria and C. began living together. The minor, his sister Cassandra R., and C.'s niece April M. also lived in the home.

At about 4:00 p.m. on January 6, 2014, C. returned home. Maria was in the kitchen, but the minor was not home. After C. ate dinner, he saw that the lock on his bedroom door had been broken. Maria said that the lock was not broken when she had left to pick up Cassandra from school at 3:45 p.m. They assumed that the minor had broken the lock, because he had done so in the past.

C. entered the bedroom and discovered that his iPod was missing. After he and Maria concluded that the minor had taken it, C. called the police. When the officers arrived, they told him that it was Maria's responsibility and that C. also had the "right to correct" the minor since he was the "owner of the home." After the police left, C. and Maria left the house at about 8:00 p.m. or 8:20 p.m.

April was home after C. and Maria left. When the minor arrived home, he knocked because he had never been given a key to the house. April called C., who gave her permission to let the minor into the house. April told the minor that she would let him in if he gave her C.'s iPod. The minor gave it to her.[1]

C. and Maria returned at about 9:30 p.m. or 10:00 p.m. The minor was cooking soup in the kitchen. C. and Maria entered the kitchen and sat at the table. Both C. and Maria repeatedly asked the minor to sit down and talk with them about the iPod and the

---

[1] April later gave the iPod to Maria, who gave it to C.

damaged doorknob. The minor did not do so. C. became angry and said, "Sit down or I'm going to throw away what you're cooking." When the minor continued to ignore him, C. grabbed the pot and threw the soup into the sink. The minor then approached C., who pushed him away. After the minor approached C. again, C. pushed him and told him to sit down. The minor turned around with closed fists, and C. asked, "What are you going to do?" The minor replied, "Let's go outside." C. understood that the minor wanted to fight, but C. did not want to fight him. C. said, "What you want to go outside? We could do it in here." The minor told C. that he was a "nobody, that he didn't have anything to say to" him. C. responded that the minor did not have a right to break the doorknob and take his iPod.

According to C., as the minor attempted to go to his own bedroom, Maria closed the bedroom door and would not let him enter. However, Maria denied blocking the minor's path and testified that she remained sitting at the table. Maria also testified that she was afraid that the minor had a weapon in his bedroom. She looked in his bedroom twice during the incident, but did not find any weapons.

When C. and Maria asked the minor why he wanted to go to his bedroom, he responded that it was none of their business. C. then grabbed the minor to try to make him sit down, but the minor started to pull away. C. grabbed him by the neck. As the minor struggled to free himself, C. held his neck tighter. When the minor began to drop to the floor, C. released his hold.

After the minor stood up, C. pushed him toward C.'s bedroom. They argued in the bedroom for five to 10 minutes. The minor told C. that he was a nobody and that he was already dead. C. asked the minor why he was behaving the way that he was and told him that if he did not like living in the house he should leave. C. pushed the minor several times.

C. eventually returned to the kitchen and the minor followed him. The minor began to prepare a pot of beans on the stove. The pot was about eight inches tall with a

3

"radius" of 10 inches. It weighed about seven or eight pounds. C. sat down at the table and was about six feet away from the minor. At this point, C. had given up arguing with the minor. The minor threw the pot of beans at C. It hit him on the ankle.

Maria returned to the kitchen after the minor threw the pot. April was in her bedroom when she heard pots banging. She went into the kitchen where she saw the minor at the stove, C. and Maria sitting at the table, and a pot of beans on the floor near C. Maria told April to call the police. While April was on the phone, she heard the minor yelling at C. and challenging him to fight. A few minutes later, the minor went outside and continued to challenge C. to fight. C. remained inside the house. When the officers arrived about 10 to 15 minutes later, the minor was screaming that C. was a dead man and that he should come out and fight. The officers told him to calm down. The entire incident lasted about 40 or 45 minutes.

C. was about five feet five inches tall and weighed 182 pounds. The minor was three or four inches taller than C. and weighed 160 to 170 pounds at the time of the hearing and five to 10 pounds less when the incident occurred. According to C., he hit the minor in the face about a week or two before the incident.

**B. Defense Case**

The minor described previous incidents in which C. had hit him. In 2013, the minor ran away from home and was staying at his aunt's house. However, he and his aunt returned to talk with Maria and C. about the family's problems. C. dragged the minor out of the car, pinned him against a tree, and hit his nose. The minor felt mad and scared. He also felt "betrayed," because his mother did not intervene.

The next incident occurred in November or December 2013. The minor and C. were arguing about whether the minor was going to remove clothing from the dryer. C. threw a container of hair gel at the minor, who was lying on his bed. C. also hit him in the stomach and on his upper lip. When the minor stood up, they pushed each other.

4

On January 6, 2014, the minor was making soup in the kitchen when C. entered. He did not want to talk to C., so he ignored him. C. took the soup and made a motion as if he was about to throw the soup at the minor. The minor stepped back, and C. threw the soup into the sink. The minor attempted to walk past C., but C. pushed him. The minor pushed him back and "then [they] just kept pushing and shoving." The minor had one hand in a fist and his other hand wrapped around it. When C. asked him whether he was going to hit him, the minor said no.

The minor tried to go to his room, but C. and his mother would not let him. C. tried to get the minor to sit by putting his arm around the minor's neck. As the minor tried to move away, C. pressed with more force. The minor lost consciousness and fell to the floor. He revived after about a minute and tried to go to his room, but C. pushed him inside C.'s room. They continued to argue. When the minor tried to leave, C. pushed him and hit him with a closed fist in the stomach. The minor returned to the kitchen. He was upset and mad, because his mother did nothing.

C. returned to the kitchen and yelled at the minor and called him names for five minutes. The minor felt "bad, upset, and just like mad." He threw the pot of beans, but his "intention, like, was never to throw it at him or to hit him." He threw the pot at a space to the side of C. He did not know that the pot hit C. until the hearing. The minor left the house. The minor was upset and yelling that C. was disrespecting him by hitting him in front of his mother.

## II. Discussion

The minor contends that his counsel rendered ineffective assistance, because he did not present an accident defense.

Trial counsel argued that the minor acted in self-defense. He argued that C. pushed, hit, and choked the minor, and would not allow him to retreat, and that the minor threw the pot to stop the violence. The minor points out, however, that he never testified

5

that he was scared and that C. was sitting in his chair for at least five minutes when the minor threw the pot. Moreover, the minor testified that he did not intend to hit C. and that he threw the pot to a space to the side of him. Thus, he claims that he received ineffective assistance of counsel, because counsel failed to argue the only viable defense.

The Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution guarantee a defendant the right to the effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93.)

"A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) Battery is a general intent crime. (*People v. Colantuono* (1994) 7 Cal.4th 206, 217.) Accident is a defense to a general intent crime. (*People v. Anderson* (2011) 51 Cal.4th 989, 998.) This defense is set forth in Penal Code section 26: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . [¶] Five—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."

Even assuming that trial counsel's performance was deficient because he did not assert the defense of accident, the minor has failed to establish prejudice. Though the minor acknowledges that it is assumed that the juvenile court correctly applied the law, he argues that "the accident defense is often misunderstood to not apply to general intent crimes" and that "[w]hen trial counsel did not argue the accident defense, the court likely

6

concluded it was not an issue, assuming the court thought of the accident defense at all on its own." We find no merit to this argument.

"The general rule is that a trial court is presumed to have been aware of and followed the applicable law. [Citation.]" (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496; Evid. Code, § 664.) This presumption includes that the trial court knew and applied the correct statutory and case law (*People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069), correctly instructs itself on the law (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499), and correctly applies the proper burden and standard of proof (*People v. Castellano* (1983) 140 Cal.App.3d 608, 612).

Here, the juvenile court found that there was "sufficient evidence to show that the battery was committed, that it was not committed in self-defense, and it was not committed by accident." The minor has not pointed to any evidence in the record that would refute the presumption that the juvenile court correctly applied the law in the present case. Accordingly, the minor has failed to establish ineffective assistance of counsel.

## III. Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Márquez, J.